IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY WHITLOCK, *et al.*, | No. C 08-2742 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS** |
| v. | |
| PEPSI AMERICAS, *et al.*, | |
| Defendants. | |

Defendants' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress is scheduled for a hearing on February 5, 2010. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing on this matter.[1] After consideration of the parties' papers, the Court hereby GRANTS defendants' motion. The case management conference scheduled for February 5, 2010 at 3:00 p.m. remains on calendar.

**BACKGROUND**

On May 30, 2008, plaintiffs filed this case alleging injuries sustained as a result of improper disposal of hazardous waste at the Remco facility located in Willits, California. Plaintiffs are residents or former residents of the city of Willits, workers at the Remco site, or associated with workers in the site or related to plaintiffs exposed to the contaminants. The complaint alleges a number of California tort claims based on hazardous waste contamination, including negligence, negligence per se, intentional

---

[1] The Court will issue separate orders on the other motions that are also scheduled for a hearing on February 5, 2010.

infliction of emotional distress, loss of consortium, nuisance, and toxic trespass. *See* Compl. ¶¶ 66-127.

The present case is the latest in a series of cases arising out of contamination at the Remco facility. In 1996, the City of Willits filed a lawsuit in this Court alleging that the Remco site was contaminated and sought an order requiring current and former owners to investigate and remediate the site. *See People of the State of California and the City of Willits v. Remco Hydraulics, et al.,* C 96-283 SI. The parties entered into a consent decree in August 1997, and since that time an extensive investigation and remediation campaign has been underway. In 1999, 2001, and 2006, three separate toxic tort actions were filed alleging personal injury and property damage claims as a result of exposure to Remco contaminants. *See Avila, et al. v. Willits Environmental Remediation Trust, et al.*, C 99-3941 SI; *Abbott et al. v. Willits Environmental Remediation Trust, et al.*, C 01-266 SI; *Nickerman, et al. v. Remco Hydraulics, Inc., et al.*, C 06-2555 SI. The three cases were consolidated in this Court, and originally involved approximately 1000 plaintiffs. Ultimately all of these claims were settled, dismissed, or lost on summary judgment. Of particular relevance to the present motion, the Court found the *Avila* and *Nickerman* plaintiffs' evidence in support of their IIED claims insufficient, and granted summary judgment in favor of defendants. *See* Docket No. 758 in *Avila*, C 99-3941 SI, and Docket No. 162 in *Nickerman*, C 06-2555 SI.[2]

In this case, plaintiffs' third cause of action alleges a claim for intentional infliction of emotional distress ("IIED"). Plaintiffs allege that "[b]y intentionally and knowingly failing to take necessary measures and actions to maintain and keep the site from hazardous substances and chemicals that contaminated the soil and groundwater at the site and properties in the vicinity, notwithstanding the fact that Defendants had been placed on notice by [] various public agencies (City of Willits, County of Mendocino and the United States) the Defendants have continued to subject Plaintiffs to exposure of the hazardous substances." Compl. ¶ 80. The complaint alleges that defendants have engaged in "intentional and knowing" conduct by "discharging, releasing, threatening to discharge, and failure to clean a known contaminated site." *Id*. ¶¶ 80-82. Plaintiffs allege that as a result of this conduct, plaintiffs have suffered and continue to suffer "severe anxiety, worry, mental and emotional distress."

---

[2] Defendants did not file a motion for summary judgment on the IIED claims in *Abbott*.

2

*Id.* ¶ 84.

Defendants propounded three interrogatories regarding plaintiffs' claims for intentional infliction of emotional distress, Interrogatory Nos. 10-12. These interrogatories asked: "For each Plaintiff asserting a claim for intentional infliction of emotional distress, <u>IDENTIFY any and all facts, evidence and DOCUMENTS</u> showing that each DEFENDANT"

- "directed the alleged conducted described [in the IIED claim in your Complaint] at each such Plaintiff or engaged in such alleged conduct in each such Plaintiff's presence." (Interrogatory Nos. 10)

- "was aware of each Plaintiff's presence when allegedly engaging in the conduct described in [the IIED portion] of YOUR COMPLAINT." (Interrogatory No. 11)

- "was aware or substantially certain that each Plaintiff would suffer severe emotional injury when allegedly engaging in conduct described in [the IIED portion] of YOUR COMPLAINT." (Interrogatory No. 12)

Tercero Decl. Ex. 3.

Each plaintiff provided identical responses to these interrogatories. Plaintiffs' responses to all three interrogatories consist of (1) a description of Remco's geographic location; (2) a discussion of the activities and operations at the site and the chemicals used there; (3) excerpts from the Findings of Fact in *People v. Remco*, 96-283 SI regarding, *inter alia*, the presence of hexavalent chromium in the soil and groundwater at and in the vicinity of the Remco site; (4) citations to California law prohibiting the discharge of certain hazardous wastes; (5) various individual accounts (by persons other than plaintiffs) of the allegedly improper disposal of hazardous waste at or in the vicinity of the Remco site or in the City of Willits; (6) references to Regional Water Quality Control Board reports regarding Remco dumping; (7) references to letters written by various neighbors of Remco complaining about leaks from the Remco plant in the 1970s and 1980s; (8) citations to various documents regarding alleged contamination at and around the Remco site; (9) references to numerous declarations and discovery responses in the *Avila* and *Nickerman* cases; (10) allegations that "defendants' employees were friends and acquaintances of the Plaintiffs," and "each defendant was aware that they were surrounded by thousands of neighbors living in homes, starting at the very fence-line of the plant and continuing in close proximity"; and (11) the fact that plaintiff Leland Chalmers was an employee at the Remco plant. *Id.* Ex. 5 (Response to Interrogatory Nos. 10-12).

3

1  Defendants also propounded three corresponding document requests seeking all documents supporting plaintiffs' IIED claims. Defendants requested that each plaintiff produce "All DOCUMENTS . . . that relate to, refer to, evidence or support YOUR contention that each Defendant":

- "directed the alleged conduct described [in the IIED portion of the Complaint] at each Plaintiff asserting a claim for [IIED] or engaged in such alleged conduct in each such Plaintiff's presence." (RPD No. 48)

- "was aware of each Plaintiff's presence when allegedly engaging in the conduct described in [the IIED portion] of the COMPLAINT." (RPD No. 49)

- "was aware or substantially certain that each Plaintiff asserting a claim for [IIED] would suffer severe emotional injury when allegedly engaging in the conduct described in [the IIED portion] of the COMPLAINT." *Id.* (RPD No. 50).

Tercero Decl. Ex. 4.

Each plaintiff responded the same response to all three requests:

> All such documents known to the Plaintiff are on disk and labeled on the index sheets at item numbers "1" and "3" or provided in hard copy format at the time of the May 21, 2007 responses in *Nickerman*. See in particular the declaration of Ann Farr filed to the federal court on 2/9/98, Water Board CAO 98-59; the Declaration of Nickerman supplied in response to Requests 6 and 14; the documents provided in opposition to Defendant's Motion for Partial Summary Judgment re Cause of Action for Intentional Infliction of Emotional Distress [in *Nickerman*]. Also see Attachments 1-A and 1-B and the rest of the document production in *Avila* RPD, #5 and #6.

Tercero Decl. Ex. 33 (Responses to RPD Nos. 48-50).

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In

judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

Defendants have moved for summary judgment on plaintiffs' claims for intentional infliction of emotional distress. Under California law, "the elements of the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . . The defendant must have engaged in 'conduct intended to inflict injury or engaged in with the realization that injury will result.'" *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991) (*quoting Davidson v. City of Westminster*, 32 Cal.3d 197, 209-10 (1982)). "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen*, 54 Cal.3d at 903.

Defendants contend that plaintiffs cannot establish the first element of their IIED claim, namely that each defendants' conduct was either (1) directed at each individual plaintiff and intended to cause that plaintiff severe emotional distress, or (2) done with knowledge of each plaintiff's presence and exposure to Remco-related hazardous substances, and with a realization that each plaintiff was substantially certain to suffer severe emotional distress. Defendants argue that none of the facts or documents referenced in plaintiffs' IIED discovery responses shows that defendants' allegedly outrageous conduct was directed at any of these plaintiffs, or occurred in the presence of a plaintiff of whom defendants were aware. Defendants argue that plaintiffs' evidence showing the existence of

5

groundwater contamination and the release and disposal of hazardous wastes at the Remco site and around Willits is insufficient to show defendants' intent or knowledge with respect to these particular plaintiffs.

In response, plaintiffs filed an 18-line opposition stating that "Plaintiffs make the same argument as in *Nickerman*, and incorporate it by reference." Opposition at 1:24. Plaintiffs also assert that they "have no duty to prove they were known [by defendants] by name," and that the phrase "particular plaintiffs," as used in the IIED case law (discussed below), "should be read to mean 'a place where people obviously lived, and Defendants knew it.'" *Id*. at 2:2-3. As an initial matter, it is wholly improper to incorporate by reference an opposition brief filed in another case. Plaintiffs' failure to address any of defendants' summary judgment arguments about *these* plaintiffs is tantamount to a failure to oppose the motion. Indeed, the Court is baffled that plaintiffs would rely on the *Nickerman* opposition brief, when that brief concerned other plaintiffs and advanced arguments that this Court previously rejected.

In any event, and for all of the reasons set forth in the order granting summary judgment on the *Nickerman* plaintiffs' IIED claims, the Court finds that the arguments advanced in the *Nickerman* opposition are unavailing. In *Nickerman*, the plaintiffs relied on *Potter v. Firestone Tire & Rubber Company*, 6 Cal.4th 965 (1993), to argue that they did not need to have evidence that defendants acted with knowledge of those particular plaintiffs. Instead, the plaintiffs argued that *Potter* recognized three different theories of bringing an IIED claim: "that defendants' misconduct was directed primarily at plaintiffs, *or* that it was calculated to cause them severe emotional distress, *or* that it was done with knowledge of their presence and with a substantial certainty that they would suffer severe emotional injury." *Potter*, 6 Cal. 4th at 1003 (emphasis added). The *Nickerman* plaintiffs contended that their IIED claims were viable under the first two "alternate theories" because,

> [I]t should be eminently clear at this point that the defendants acted in a "calculated" manner to injure these plaintiffs. Defendants intended for the citizens of Willits to be injured so that they could make their money and not be subject to the cost of environmental protections. It doesn't get much more "calculated" than that. . . . Similarly, under the second theory, defendant's conduct is "directed primarily at the plaintiff." The analysis is virtually the same as above. Defendants knew that the plaintiffs were there in the city of Willits. There is no duty under this theory to prove that the defendants were "aware of the presence of any particular plaintiff."

*Nickerman* Plaintiffs' Opposition and Cross-Motion at 20:14-24. In relying on these arguments, the present plaintiffs apparently concede that they do not have any evidence that defendants directed any conduct at these particular plaintiffs either with the intent to cause harm, or in reckless disregard of the probability of causing harm. Instead, plaintiffs appear to contend that because defendants intended for the "citizens of Willits" to be harmed, plaintiffs can proceed with their IIED claims.

Plaintiffs' arguments lack merit. *Potter* does not recognize an IIED claim based on general misconduct. To the contrary, *Potter* held that the *only* exception to the general rule limiting claims of intentional infliction of emotional distress to egregious conduct *toward plaintiff* is "when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff." *Potter*, 6 Cal.4th at 1001-02. In *Potter*, the plaintiffs were residents who lived adjacent to a landfill at which the dumping of toxic substances was prohibited. For a number of years Firestone disposed of toxic wastes at the landfill, despite its knowledge that the disposal of such substances was prohibited. *Id.* at 975-76. The plaintiffs discovered that toxic chemicals had contaminated their domestic water wells, and sued Firestone for, *inter alia*, intentional infliction of emotional distress. *Id.* at 976. The trial court found in favor of the plaintiffs and held Firestone liable for intentional infliction of emotional distress because documents showed that Firestone knew of the dangers of toxic waste, and knew that the landfill prohibited the disposal of such substances, and yet Firestone continued to dispose of its waste at the site. *Id.* at 977.

The California Supreme Court remanded the plaintiff's intentional infliction of emotional distress claim, and found that it was "questionable" whether the record supported a finding of Firestone's liability on that claim. The court noted that it was ambiguous whether the lower courts had determined that "Firestone's conduct was directed at these particular plaintiffs in the sense intended by *Christensen*."

> Although the Court of Appeal correctly rejected Firestone's contention that Firestone was not liable because it did not know the particular names of any individual whose groundwater was contaminated by the hazardous waste, it is unclear whether it believed that Firestone was actually aware of these particular plaintiffs and their consumption and use of the water.
>
> Furthermore, it is questionable whether the trial court made a finding that Firestone possessed the requisite knowledge, and if so, whether such a finding would be supported by substantial evidence. Although the trial court concluded that Firestone "had to

7

> realize" that the eventual discovery of the toxic contamination "by those drinking the contaminated water would almost certainly result in their suffering severe emotional distress," this may be interpreted in one of two ways. First, this may have been a finding that Firestone actually knew of these particular plaintiffs and their consumption of the water, and nevertheless sent prohibited wastes to Crazy Horse [landfill] despite a realization that plaintiffs would almost certainly suffer severe emotional distress upon their discovery of the facts. Alternatively, this may have been a finding that Firestone had to have realized that its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and subsequently discover the facts. Although the knowledge requirement is met in the first interpretation of the court's ruling, it is not satisfied under the second because knowledge of *these particular plaintiffs* is lacking.

*Id.* at 1002-03 (emphasis in original). Thus, *Potter* holds that a plaintiff asserting an IIED claim must show that the defendant's conduct was directed at that particular plaintiff, and it is not enough to show that the defendant knew or should have known that there may be people in the area who might be affected by defendants' conduct.

Under the guidance of *Potter*, the Court concludes that plaintiffs have failed to submit any evidence showing that defendants "actually knew of these particular plaintiffs and their consumption of the water, and nevertheless [continued to dispose of chromium] despite a realization that plaintiffs would almost certainly suffer severe emotional distress upon their discovery of the facts." *Id*. at 1002-03. Plaintiffs' discovery responses repeatedly assert that Remco knew or should have known about plaintiffs' exposure and risk, which under *Potter* is insufficient. Similarly, plaintiffs' discovery responses assert that defendants improperly disposed of hazardous wastes at the Remco facility, in the storm drains outside the facility, and at certain offsite areas within the Willits community. Even accepting these assertions as true, plaintiffs have not shown that any plaintiff was present during the alleged releases, or that defendants were aware of plaintiffs' presence at that time.

Plaintiffs' showing (through their discovery responses) is more akin to the situation described in *Potter* in which a defendant "had to have realized that its misconduct was almost certain to cause severe emotional distress to any person who might foreseeably consume the water and subsequently discover the facts." *Potter*, 6 Cal.4th at 1003. As the *Potter* court held, such a theory would support a claim for negligent infliction of emotional distress, but not intentional infliction of emotional distress. *Potter* emphasized that a plaintiff asserting a claim for intentional infliction of emotional distress faced a heavy burden to establish the defendant's knowledge "of these particular plaintiffs." *Id.* at 1003.

8

At the end of plaintiffs' 18-line opposition, plaintiffs state that "[i]f the court has any concerns about the adequacy of Plaintiffs' cause of action, Plaintiffs request leave to amend the complaint to conform with the court's order. The Defendants filed no 12(b)(6) action in this case, and the motion for summary judgment should be treated as a motion for judgment on the pleadings." Opposition at 2:5-8. There is no support for plaintiffs' assertion that because defendants did not move to dismiss the complaint they are somehow precluded from now moving for summary judgment. Moreover, plaintiffs' request to amend the complaint wholly misunderstands the thrust of defendants' motion for summary judgment, which does not challenge the adequacy of the *allegations* in the complaint, but challenges the sufficiency of plaintiffs' *evidence* in support of the IIED claim. Because of the factual deficiencies identified above, leave to amend the IIED claim would be futile.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on plaintiffs' claims for intentional infliction of emotional distress. (Docket No. 82)

**IT IS SO ORDERED.**

Dated: January 26, 2010

SUSAN ILLSTON
United States District Judge