1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   HARRY WHITLOCK, *et al.*,                          No. C 08-2742 SI

9              Plaintiffs,                             **ORDER GRANTING DEFENDANTS'**
                                                       **MOTION FOR SUMMARY JUDGMENT**
10      v.                                             **ON CLAIMS BASED ON**
                                                       **PRECONCEPTION EXPOSURE**
11  PEPSI AMERICAS, *et al.*,

12              Defendants.
                                                /
13

14          Defendants' motion for summary judgment on claims based on preconception exposure is

15  scheduled for a hearing on February 5, 2010.  Pursuant to Civil Local Rule 7-1(b), the Court determines

16  that the matter is appropriate for resolution without oral argument, and VACATES the hearing on this

17  matter.[1]  After consideration of the parties' papers, the Court hereby GRANTS defendants' motion. The

18  case management conference scheduled for February 5, 2010 at 3:00 p.m. remains on calendar.

19

20                                          **BACKGROUND**

21          On May 30, 2008, plaintiffs filed this case alleging injuries sustained as a result of improper

22  disposal of hazardous waste at the Remco facility located in Willits, California.  Plaintiffs are residents

23  or former residents of the city of Willits, workers at the Remco site, or associated with workers in the

24  site or related to plaintiffs exposed to the contaminants.  The complaint alleges a number of California

25  tort claims based on hazardous waste contamination, including negligence, negligence per se, intentional

26  infliction of emotional distress, loss of consortium, nuisance, and toxic trespass. *See* Compl. ¶¶ 66-127.

27
_____

28          [1] The Court will issue separate orders on the other motions that are also scheduled for a hearing
    on February 5, 2010.

1   Plaintiff Ralph Weber, who has never worked or lived in Willits, seeks compensation solely for

2   personal injuries,[2] and based on the alleged preconception exposure of his parents and grandparents.

3   In his discovery responses, Mr. Weber claims that his maternal grandparents, who lived in Willits

4   between 1953 and 1966, were exposed to a variety of Remco contaminants. *See* Dampf Decl. Ex. 4 at

5   Question 28 (Weber Questionnaire Response). As a result of his grandparents' alleged exposure, Mr.

6   Weber's mother allegedly suffered preconception injuries, which, in conjunction with the direct

7   exposure that she claims to have endured while living in Willits between 1955 and 1966, resulted in

8   genetic damage that was allegedly passed to Mr. Weber upon conception. Mr. Weber was born in 1976.

9   Mr. Weber claims that as a result of the alleged preconception exposure, he suffers from a birth defect,

10  Attention Deficit Disorder, nosebleeds, dizziness/fainting spells, shortness of breath, headaches,

11  orthodontia or dental conditions, and injuries to his heart/circulation, immune, and nervous systems.

12  *Id*. at Section III ("Claims"). In addition to Mr. Weber, eleven other plaintiffs allege personal injury

13  claims based on alleged preconception exposure, as well as direct exposure. Those plaintiffs are John

14  Davies II, Melissa Davies, Michelle Davies, Michael Mabery, Rebekah Anastasiou (Mabery), Daniel

15  Mendez (Smith), Danielle Smith (Mendez), Kala Smith, Jonathan Wakeland, Ruth Weber, and Franklin

16  Winnemucca.

17

18                                        **LEGAL STANDARD**

19  Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories,

20  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

21  material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

22  56(c).

23  In a motion for summary judgment, "[if] the moving party for summary judgment meets its

24  initial burden of identifying for the court those portions of the materials on file that it believes

25  demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so

26  that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts

27

28  [2] Mr. Weber does not assert any claims for loss of consortium or trespass, nor does he allege any claims for property damage.

**United States District Court**
For the Northern District of California

showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

# DISCUSSION[3]

Defendants seek summary judgment on all claims alleged by Mr. Weber, and on the claims of eleven plaintiffs listed above to the extent those claims are based on alleged preconception exposure. Defendants contend that California law does not recognize a preconception cause of action except in cases involving a medical professional or product manufacturer whose alleged negligent conduct was directly related to reproduction.

California case law establishes that a cause of action for negligence, in a preconception case or otherwise, requires (1) a duty of care; (2) breach of that duty; (3) injury resulting from that breach; and (4) compensable damages. *See, e.g., Huggins v. Longs Drug Stores California, Inc.*, 6 Cal. 4th 124, 129 (1993).  To be found liable in tort, defendants must have owed a duty of care to plaintiffs. "A tort, whether intentional or negligent, involves a legal duty, whether by statute, contract, or otherwise. Without a duty, 'any injury is *damnum absque injuria*—an injury without a wrong.'" *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal App. 4th 1011, 1016 (1997) (quoting 5 Witkin, *Summary of*

---

[3] In an order filed March 23, 2004 in the related case *Avila et al. v. Willits Environmental Remediation Trust*, C 99-3941 SI, the Court granted defendants' motion for summary judgment on claims based on preconception exposure.  The Court held that under California law, defendants who may have negligently disposed of hazardous chemicals in the course of their business do not owe a duty of care to the subsequently conceived offspring of a person whose genetic structure was allegedly altered by exposure to the harmful chemicals.  Plaintiffs, who are represented by the same counsel as the *Avila* plaintiffs, rely on the same theories advanced in *Avila* regarding the preconception claims, and yet California law remains unchanged since the Court's March 23, 2004 order in *Avila*.

1    *California Law*, Torts § 6 at 61 (9th ed. 1988). Whether there exists a legal duty of care "is a question

2    of law to be determined on a case-by-case basis." *Parsons v. Crown Disposal Co.*, 15 Cal. 4th 456, 472

3    (1997). The existence of duty "depends upon the foreseeability of the risk and upon a weighing of

4    policy considerations for and against imposition of liability." *Marlene F. v. Affiliated Psychiatric*

5    *Medical Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). "The foreseeability of a particular kind of harm plays

6    a very significant role in this calculus . . . ." *Ballard v. Uribe*, 41 Cal. 3d 565, 573 (1986).

7      Few California courts have addressed the question of how the duty/foreseeability element of a

8    negligence cause of action applies in the context of a preconception tort. In *Turpin v. Sortini*, 31 Cal.

9    3d 220 (1982), the California Supreme Court recognized a cause of action for a preconception tort,

10    although the justices differed in the types and amount of damages they would have awarded. In *Turpin*,

11    after medical care providers failed to diagnose hereditary total deafness in plaintiff's older sibling,

12    plaintiff's parents conceived plaintiff, who was born totally deaf. Plaintiff sought general damages for

13    being "deprived of the fundamental right to be born as a whole, functional human being without total

14    deafness," and special damages for expenses such as specialized teaching, training, and hearing

15    equipment. The *Turpin* court grappled with the complexities of awarding damages where, but for

16    defendant's negligence, plaintiff would not have been born at all. The court found it impossible to

17    assess general damages in such a "wrongful life" case, and denied general damages as unascertainable.

18    The court did, however, recognize plaintiff's cause of action and allowed special damages for expenses

19    including specialized teaching. In reaching its conclusion, the court stated: "If [plaintiff's] deafness was

20    caused by negligent treatment of her mother during pregnancy, *or if it resulted from a tort committed*

21    *upon her mother before conception*, it is clear that she would be entitled to recover against the negligent

22    party." *Turpin*, 31 Cal. 3d at 230-231 (emphasis added). Since *Turpin*, the few California courts that

23    have addressed preconception torts have confined *Turpin* to its facts. *See, e.g.*, *Gami v. Mullikin*

24    *Medical Center*, 18 Cal. App. 4th 870, 883 (1993) ("Claims for 'wrongful life' are essentially actions

25    for malpractice based on negligent genetic counseling and testing."); *Foy v. Greenblott*, 141 Cal. App.

26    3d 1, 14 (1983) (construing *Turpin* to permit preconception claims "only where [defendants] have failed

27    to diagnose and warn the parents of the probability that an infant will be born with a hereditary ailment

28    or disability and the infant is in fact born with that ailment").

4

1    *Hegyes v. Unjian Enterprises, Inc.*, 234 Cal. App.3d 1103 (1991), is instructive.  In *Hegyes*, a
2    woman was in an automobile accident and sustained injuries requiring that she be fitted with a peritoneal
3    shunt.  Thereafter, she became pregnant and, during the pregnancy, the fetus pressed against the shunt,
4    resulting in a premature delivery and consequent injury to the child.  The child then sought to recover
5    against the negligent driver responsible for the mother's accident-related injuries.  The court concluded
6    that a negligent motorist does not owe a legal duty of care to the subsequently conceived child of a
7    woman who is injured in an automobile accident.  *Id.* at 1110.  The *Hegyes* court held that a duty to the
8    unconceived exists only when a defendant's conduct involves the provision of medical services or
9    products related to the reproductive process.  The *Hegyes* majority noted that under California law, "a
10   duty has never been found, nor has liability been imposed, in a preconception negligence case where
11   defendant was not a medical professional or product liability manufacturer."  *Id.* at 1113.  *See, e.g.,*
12   *Curlender v. Bio-Science Laboratories*, 106 Cal. App. 3d 811 (1980) (finding a duty against medical
13   professionals who negligently performed genetic testing); *Jorgensen v. Meade Johnson Laboratories,*
14   *Inc.*, 483 F.2d 237 (10th Cir. 1973) (finding a duty against a manufacturer of birth control pills); *Foy*,
15   141 Cal. App. 3d 1(denying a plaintiff's claim for "wrongful life" where plaintiff's mother, an
16   incompetent person, became pregnant while detained in a mental health facility and gave birth to a
17   normal, healthy boy).

18   Plaintiffs advance a number of theories about why defendants should be liable for preconception
19   negligence, such as analogizing toxic torts to products liability, relying on cases involving nuisance, and
20   arguing that there is a special relationship between a polluting landowner and a neighbor.  However, to
21   date no California courts have found a duty to a preconception plaintiff for torts unrelated to the
22   reproduction context.  *Hegyes* has been the law in California for 19 years.  If science and medicine
23   progress to the point that scientists can interpret individual DNA histories or can confidently attribute
24   injuries to chemical exposure, the foreseeability that negligent disposal of hazardous chemicals may
25   genetically damage a later conceived child may become  clearer.  A California appellate court may
26   choose to distinguish the negligent car driver scenario in *Hegyes*, and uphold the more general duty to
27   preconception plaintiffs suggested by *Turpin*.  This Court, however, is bound to apply the law as it
28   presently stands in California.  In this case, defendants' predecessors produced hydraulic cylinders for

5

1  use in various applications, including highway construction equipment, offshore drilling operations, and

2  tunneling equipment.  Defendants did not provide goods or services having a direct relationship to the

3  reproductive process. Hence, defendants who may have negligently disposed of hazardous chemicals

4  in the course of their business, do not owe a duty of care to the subsequently conceived offspring of a

5  person whose genetic structure was allegedly altered by exposure to the harmful chemicals.

6  At the end of plaintiffs' opposition, plaintiffs state that "[i]f the court has any concerns about the

7  adequacy of Plaintiffs' cause of action, Plaintiffs request leave to amend the complaint to conform with

8  the court's order.  The Defendants filed no 12(b)(6) action in this case, and the motion for summary

9  judgment should be treated as a motion for judgment on the pleadings."  Opposition at 7:3-6.  There is

10  no support for plaintiffs' assertion that because defendants did not move to dismiss the complaint they

11  are somehow precluded from now moving for summary judgment.  Moreover, because the Court

12  concludes that summary judgment is warranted as a matter of law, leave to amend would be futile.

13

14  **CONCLUSION**

15  For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment on

16  claims based on preconception exposure.  (Docket No. 76)

17

18  **IT IS SO ORDERED.**

19

20  Dated: January 26, 2010

SUSAN ILLSTON
United States District Judge

21

22

23

24

25

26

27

28

6